UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

MARY HENRY,                          )
                                     )
        Plaintiff,                   )          No. 6:25-CV-109-HAI
                                     )
v.                                   )
                                     )          MEMORANDUM OPINION
FRANK J. BISIGNANO,                  )              & ORDER
*Commissioner of Social Security*,   )
                                     )
        Defendant.                   )
                                     )

*** *** *** ***

In November 2022, Plaintiff Mary Henry filed a protective Title XVI application for supplemental security income. *See* D.E. 12 at 18.[1] She alleged disability beginning December 31, 2018 (although the relevant period would begin the date of the application). *Id*. The Social Security Administration denied Henry's application initially and upon reconsideration. *Id*. Then, on May 8, 2024, Administrative Law Judge ("ALJ") Lauren K. Tran conducted a telephonic administrative hearing. The ALJ heard testimony from Henry (represented by attorneys Paul Baker and Michael Goforth with only Goforth appearing at the hearing) and impartial vocational expert ("VE") Pamela Scalf. *Id*. Henry was found to not be disabled during the relevant period. *Id*. at 29. The Appeals Council denied review on April 17, 2025. *Id*. at 1.

On June 19, 2025, Henry (with different counsel) brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's June 2024 decision denying her application. Henry filed her brief on September 11, 2025, and the Commissioner filed his brief on

---

[1] Page-number citations to the administrative record are to the large black page numbers at the bottom of each page. Page-number citations to the parties' briefs refer to the blue page numbers generated by ECF.

December 23, 2025. D.E. 13, 15. No reply was filed. Although the parties consented to magistrate-judge jurisdiction back in June 2025 (D.E. 8), due to a clerical error, the undersigned was not added to this case until August 4, 2026. The matter has now been referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's request to remand these proceedings.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Henry "has not engaged in substantial gainful activity since November 15, 2022, the application date (20 CFR 416.971 et seq.)." D.E. 12 at 20.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). In this case, the ALJ found Henry had a single severe impairment: "post-traumatic stress disorder

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

(PTSD). (20 CFR 416.920(c))." D.E. 12 at 20. Henry does not argue the ALJ should have identified additional severe impairments.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Henry failed to meet this standard. D.E. 12 at 22. Relevant to this appeal, the ALJ considered trauma- and stressor-related disorders under Listing 12.15. *Id*. at 22-23.

Some aspects of the ALJs' step-three consideration of potential mental impairments are relevant to the parties' arguments. The ALJ considered the four different domains of the "paragraph B criteria" and found that Henry had "moderate" limitation in all four mental-functioning domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself. D.E. 12 at 22-23.

In these analyses, the SSA uses a five-point rating scale of increasing limitation consisting of "no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The regulations define these five levels of limitations as follows:

    a.    No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

    b.    Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

    c.    Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

    d.    Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

    e.    Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F.

Henry's argument on appeal centers on the ALJ's finding of moderate limitation in adapting or managing herself. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00, describing "Mental Disorders."

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is her maximum ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember and carry out simple instructions and perform simple tasks, with no more than occasional interaction with supervisors, coworkers or the public.

D.E. 12 at 23.

Henry objects to this RFC finding. She argues the RFC does not properly account for her moderate limitation in adapting or managing oneself, or, in the alternative, she argues the ALJ did not adequately explain the linkage between the limitations in the RFC and the finding that Henry had severe PTSD, which included moderate limitation in adapting and managing oneself. D.E. 13.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of the claimant's residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Henry was unable to perform her past relevant work as a home attendant. D.E. 12 at 27.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is

4

not disabled.  20 C.F.R. § 404.1520(g).  The ALJ found Henry was not disabled at this step.  D.E. 12 at 28-29.  The ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with [Ms. Henry's] age, education, work experience, and residual functional capacity."  *Id*. at 28.  The expert provided a list of jobs including kitchen helper, floor waxer, and laboratory equipment cleaner.  *Id*. at 28-29.  Because sufficient work existed in the national economy that Henry could perform, the ALJ found her "not disabled" as defined by the regulations.  *Id*. at 29.

Henry presents a single, narrow argument:  that the RFC "failed to mention any mental limitations, *moderate* or otherwise, that accounted for Plaintiff's issues with her ability to adapt or manage herself."  D.E. 13 at 9.  She argues that the RFC should have included such limitations, or alternatively that the ALJ should have expressly explained why such limitations were not included in the RFC.  *Id*. at 8, 10.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can

5

go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

6

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

### III. Moderate Limitation in Adapting or Managing Oneself

As previously noted, concerning the paragraph B mental-health criteria, the ALJ found "moderate" limitation in all four domains, including "adapting or managing oneself." To be clear, the only medical opinions in the record that address Henry's mental health conclude that Henry had only mild limitations in the paragraph-B domains. No medical opinion in the record finds severe, marked, or even moderate limitations. Based largely on Henry's hearing testimony, the ALJ rejected the mild-limitations conclusions of the state mental health examiners and instead assigned "moderate" limitation in all four domains. The ALJ also (having found Henry's PTSD to be a severe impairment) included mental-health-related restrictions in RFC: "The claimant can understand, remember and carry out simple instructions and perform simple tasks, with no more than occasional interaction with supervisors, coworkers or the public." D.E. 12 at 23.

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

State agency psychological consultant Janice Ritch, Ph.D., reviewed Henry's available records in January 2023.  D.E. 12 at 58-62.  She found mild limitations in all four of paragraph-B's mental-health domains.  *Id*. at 60.  Then, state agency psychological consultant Clarissa Roan-Belle, Ph.D., reviewed Henry's records in July 2023.  *Id*. at 63-68.  She also found mild limitations in all four of paragraph-B's mental-health domains.  *Id*. at 66.

In her Step-Three analysis, the ALJ addressed the paragraph-B domain of adapting or managing oneself:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation.  While the claimant reported that she does not handle stress or changes in routine well, she reported no recent psychiatric hospitalization; only intermittently attended mental health counseling and was treated rather conservatively with prescribed medications, which were occasionally changed, either at claimant's request or because she had stopped them on her own volition. (Exhibits 4F, pp. 16 and 56).  Nonetheless, repeat mental status examinations revealed that claimant had no difficulties in managing herself, as she was consistently described as alert and oriented with good hygiene and appearance. (Exhibits 4F, pp. 43-45, 102, 117, 121 and 138).  Accordingly, the undersigned finds that the claimant has moderate limitations in the area of adapting or managing oneself.

D.E. 12 at 23.  The ALJ then observed:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

*Id*.

In the ALJ's RFC analysis, after describing Henry's medical history and the hearing testimony, the ALJ addressed the issuance of mental-health-related work limitations:

> From a mental perspective, the undersigned also considered the opinions of State agency mental health consultants, Janice Ritch, Ph.D. and Clarissa Roan-

Belle, Ph.D., who opined at both the initial and reconsideration determination level that claimant had no severe medically determinable mental impairments; and therefore, assessed no limitations therefrom.  (Exhibits 2A and 3A).  However, these opinions were found to be less persuasive given claimant's reports of past trauma, both as a child and as an adult, as well as her ongoing need for prescribed mental health medications.  While claimant's representative requested a mental health consultative examination at the end of the hearing in this matter, the undersigned found no support for allowing same, as claimant required no psychiatric hospitalizations during the adjudicatory period and either repeatedly manipulated treatment to get medications for others and/or failed to attend IOP or take medications as prescribed.  (Exhibits 2F, pp. 28-29 and 48-49; Exhibit 3F, pp. 62, 69 and 78 and 4F, pp. 1, 16, and 43-45).  **Nevertheless, out of an abundance of caution, the undersigned found claimant's PTSD to be severe in nature and assessed moderate limitations in all four areas of mental health functioning due to her ongoing need for prescribed medications, which were occasionally adjusted.**  However, further limitations were not warranted by the overall record, as the evidence of record reflects that when claimant follows medical advice and takes medications as prescribed, she remains stable, reporting no anxiety or depressive symptoms and admitted that her hallucinations were non-existen[t].  She further reported completion of activities, such as the maintained ability to perform matters of personal care independently; shop in stores; prepare meals and perform household chores, all of which negates total disability and/or more than moderate mental health limitations.

*Id*. at 26-27 (emphasis added).

The issue is whether the RFC appropriately accommodates the ALJ's findings of moderate limitation in adapting or managing oneself.  *See* D.E. 13 at 9-15.  The Court sees no reason for doubting that the ALJ's limitations of "simple instructions," "simple tasks," and only "occasional interaction with supervisors, coworkers or the public" were crafted to address Henry's moderate limitations (related to her PTSD) in all four domains.  Indeed, the ALJ's discussion, just quoted, states that the ALJ considered Henry's "moderate limitations in all four areas" in crafting the RFC.  This indicates both that the RFC's mental-health limitations took into account Henry's moderate limitation in adapting or managing herself and that the ALJ stated a logical bridge between that moderate limitation and the RFC's limitations regarding "simple" instructions/tasks and limited interactions with other people.  The ALJ's written opinion shows that the ALJ

9

considered Henry's moderate limitation in adapting or managing herself in the process of crafting the RFC. At the first four steps of the disability analysis, "the burden is on the claimant." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Henry has not met her burden to overturn the ALJ's RFC.

This is not a case where the ALJ's only reference to the mental-health limitation was found in the ALJ's discussion at step two. *See* D.E. 13 at 13 (citing *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *5-7 (E.D. Mich. Feb. 27, 2015)). This case is not like *Katona*. There, the court explained:

> While the ALJ devoted a detailed discussion to his evaluation of Plaintiff's mental complaints at Step Two . . ., the remainder of the ALJ's opinion, including at Steps Three and Four, is devoid of any reference to Plaintiff's alleged mental impairments, suggesting that the ALJ did not consider those impairments while determining Plaintiff's RFC, contrary to what is required under the social security regulations.

*Katona*, 2015 WL 871617, at *5. As shown by the above quotation from pages 26-27, the ALJ here considered Henry's mental-health limitations within the RFC analysis.

In sum, it is reasonable to conclude from the context of the ALJ's written opinion that limiting Henry to simple instructions/tasks and limited interactions with other people was the ALJ's way of addressing Henry's moderate mental limitations—in all four domains.[4] Given the

---

[4] In any event, it is not necessary for an RFC to include specific restrictions when moderate mental limitations are present. An ALJ "is required to consider the effects of both severe and non-severe impairments in determining the RFC." *Kohne v. Kijakazi*, No. 2:23-CV-37-DCR, 2023 WL 5220853, at *4 (E.D. Ky. Aug. 14, 2023). However, findings made at earlier steps do not automatically carry over into the RFC. *Richardson v. Saul*, 511 F. Supp. 3d 791, 798 (E.D. Ky. 2021). In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC. *Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685, at *7 (E.D. Ky. Jan. 26, 2024); *Karen Marie M. v. Kijakazi*, No. 2:20-CV-416-DCN-REP, 2021 WL 6010422, at *6 (D. Idaho Nov. 19, 2021), *recommendation adopted*, 2021 WL 5999132 (D. Idaho Dec. 20, 2021). "Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work." *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017), *recommendation adopted*, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017). Thus, there is no requirement that moderate mental-health limitations be incorporated into the RFC in every case. *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *6 (6th Cir. Dec. 13, 2017); *Jarrell v. O'Malley*, No. 3:23-CV-78-EBA, 2024 WL 4357556, at *5 (E.D. Ky. Sept. 30, 2024) (citing *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. Jan. 31, 2020)).

ALJ's robust discussion of Henry's mental limitations, the ALJ's rationale is sufficiently articulated for this Court to review. The step-four RFC portion of the ALJ's opinion referenced Henry's mental-health limitations in a manner that cross-referenced the previous mental-health discussion at steps two and three. Taken together, they establish substantial evidence in support of the ALJ's RFC. On this record, the Court cannot find that the RFC is unsupported by substantial evidence or based on a legal error. *See, e.g.*, *Blackburn v. Bisignano*, No. 6:25-CV-82-HAI, 2026 WL 1018333, at *7-8 (E.D. Ky. Apr. 15, 2026) (discussing the interaction between moderate mental limitations and "simple" work); *K.R.S. v. Bisignano*, No. 6:25-CV-92-GFVT, 2026 WL 542348, at *5 (E.D. Ky. Feb. 26, 2026) (same); *Tackett v. Bisignano*, No. 6:25-CV-40-HAI, 2025 WL 2984313, at *5 (E.D. Ky. Oct. 22, 2025) (same); *Miller*, 2024 WL 315685, at *6 (same); *Borgan v. Comm'r of Soc. Sec.*, No. 2:20-CV-6166, 2022 WL 109346, at *6 (S.D. Ohio Jan. 12, 2022) (affirming when the ALJ found moderate limitation in adapting or managing oneself and the RFC limited the claimant to "simple, routine tasks, occasional interaction with supervisors, co-workers, and the public, and occasional and routine workplace changes"), *recommendation adopted*, 2022 WL 2612101 (S.D. Ohio Jan. 27, 2022).

The ALJ here did not ignore Henry's moderate limitations. Instead, the ALJ took those limitations specifically into account when crafting the RFC. *See Miller*, 2024 WL 315685, at *6. The RFC accordingly is not unsupported by substantial evidence on this ground. This is not a case where the Court "simply cannot discern [why the RFC omits mental limitations] because the ALJ did not in any way address the matter." *Richardson*, 511 F. Supp. 3d at 799. Nor is this a case where the ALJ made "no mention of the claimant's mental impairment in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

11

## IV.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**.  Plaintiff's request to remand (D.E. 13) is **DENIED**.  Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 7th day of August, 2026.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge